UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sheretta Bailey,

        Plaintiff,

v.

Equifax Information Services, LLC, et al.,

        Defendants.

_____/

Case No. 13-10377

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS/MOTION TO DISMISS [14]**

In this Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., action, Plaintiff Sheretta Bailey seeks to hold Defendants Equifax Information Services and FIA Card Services, NA (incorrectly identified in the complaint as Bank of America), liable for allegedly reporting inaccurate information on her credit report. Because the Court finds that Defendants did not report inaccurate information and that Plaintiff has not pleaded facts that support a claim that the information was misleading or that Defendants conducted unreasonable reinvestigations, and for the reasons more fully explained below, the Court GRANTS Defendants' motion for judgment on the pleadings/motion to dismiss.

**I.      Facts**

Summarily, Plaintiff alleges that Equifax violated the FCRA when it did not remove from her credit report the FIA account information listing Plaintiff as an "authorized user" on a account when she was not the owner of or liable for the account when she requested it to do so and that Equifax did not conduct a reasonable investigation into the action;

Plaintiff alleges that FIA violated the FCRA when it did not remove the account information when it received information from Equifax that Plaintiff disputed the information.

Sometime in 2012, Plaintiff does not state when, she requested her credit report from three credit reporting agencies (CRAs), Trans Union, Experian, and Equifax. Plaintiff disputed two of the reported accounts on her credit report: (1) an American Express account showing that she was an authorized user on the account and that the account was reporting a balance of $1,450.00 and (2) an FIA account showing that she was an authorized user on the account and that the account was reporting a balance of $1,284.00. Plaintiff states that she is not an obligor on either account, and, as a result, was not liable for the balances. Plaintiff does not state who owns the account.

Around September 18, 2012, Plaintiff states that she sent dispute letters regarding the American Express and FIA accounts to Trans Union, Experian, and Equifax. (Compl. ¶ 8.) Plaintiff states that in the dispute letters, she told the credit reporting agencies that she was only an authorized user on the accounts, and not liable on the accounts. (*Id.*) She states that she asked the credit bureaus to remove the accounts from her credit reports. (*Id.*)

Plaintiff states that Trans Union and Experian removed the accounts from her reports but that Equifax did not. (Compl. ¶ 9.) Plaintiff states that she never received a response from Equifax regarding the disputed accounts. (*Id.* ¶ 10.)

In the beginning of November, 2012, Plaintiff states that she received her credit report from Equifax and that both American Express and FIA were reporting the accounts on her report. (Compl. ¶¶ 11-12.) She adds that FIA reported that Plaintiff was an "authorized user" of the account and that the account had a balance of $1,284.00. (*Id.* ¶ 12.)

2

Plaintiff alleges that Equifax prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports about Plaintiff, as defined in 15 U.S.C. § 1681a.  (Compl. ¶ 26.)  Plaintiff further alleges that those reports contained information about Plaintiff that was false, misleading, and inaccurate.  (*Id.* ¶ 27.)  Plaintiff states that Equifax negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, violating 15 U.S.C. § 1681e(b). (*Id.* ¶ 28.)  Plaintiff also states that, when she contacted Equifax about the false reports, Equifax negligently failed to conduct a reasonable reinvestigation, which 15 U.S.C. § 1681i requires.  (*Id.* ¶ 29.)  Equifax's actions, Plaintiff maintains, caused Plaintiff to suffer actual damages, mental anguish and suffering, humiliation, and embarrassment.  (*Id.* ¶ 30.)

Plaintiff also asserts a cause of action alleging that Equifax willfully performed the above actions.  (Compl. ¶¶ 35-37.)

As to FIA, Plaintiff alleges that, after being informed by three credit reporting agencies about Plaintiff's consumer dispute, FIA negligently failed to conduct a proper reinvestigation of Plaintiff's dispute as 15 U.S.C. 1681s-2(b) requires.  (Compl. ¶ 40.)  Plaintiff also alleges that FIA negligently failed to review all the relevant information available to it and provided by each credit reporting agency in conducting its reinvestigation, as 15 U.S.C. 1681s-2(b) requires.  (*Id.* ¶ 41.)  Plaintiff specifically states that FIA failed to direct all of the credit reporting agencies to remove the account.  (*Id.* ¶ 41.)  Plaintiff asserts that the FIA account is inaccurate and creates a misleading impression of Plaintiff's consumer credit file with each credit reporting agency.  (*Id.* ¶ 42.)  As a result of FIA's alleged negligent failure to

3

perform its FCRA duties, Plaintiff alleges that she has suffered damages, mental anguish, suffering, humiliation, and embarrassment.  (*Id.* ¶ 43.)

Plaintiff also asserts a cause of action for FIA's willful actions that mirrors her negligence cause of action.  (Compl. ¶¶ 47-50.)

## II.   Standards of review

### A.  Rule 12(c) standard of review

At any time after the pleadings close, but before trial commences, a party may move for a judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The standard of review is the same *de novo* standard applicable to a motion to dismiss brought pursuant to Rule 12(b)(6).  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

The Court reviews the motion in a light most favorable to the plaintiff, assumes that the plaintiff's factual allegations are true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Id.*  This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The Court need not accept as true legal conclusions or unwarranted factual inferences.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

If the court, however, considers matters outside the pleadings, it must treat the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See Rubin v. Schottenstein, Zox, & Dunn*, 110 F.3d 1247, 1253 (6th Cir. 1997).

### B.   Rule 12(b)(6) standard of review

4

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

"[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 679 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Id.* (internal quotation marks and citation omitted).  Thus:

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled

5

> to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Id.* at 678 (internal quotation marks and citation omitted).

## III.   Analysis

Plaintiff has filed this FCRA action against Equifax and FIA claiming that their failure to remove the pending FIA account from the credit report was either a negligently or willfully imposed inaccuracy in the credit report that harmed her.  She also alleges that they failed to conduct reasonable reinvestigations into the accuracy of the reports.

The FCRA exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). The FCRA "imposes distinct obligations on three types of entities: (1) consumer reporting agencies: (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies."  *Nelski v. Trans Union, LLC*, 86 F.App'x 840, 844 (6th Cir. 2004) (citation omitted).

The FCRA imposes liability on these three types of entities for willful or negligent violations of the applicable FCRA provisions.  *Nelski*, 86 F.App'x at 844; 15 U.S.C. §§ 1681n, 1681o.  While some FCRA provisions do not allow private enforcement suits, the provisions Plaintiff seeks to enforce do provide private causes of action.  *Id.*

**A. Plaintiff has not stated a cause of action against Equifax for violating §
1681e(b) because Plaintiff has failed to allege facts that Equifax reported
inaccurate information or information that was  misleading**

Plaintiff alleges that Equifax violated § 1681e(b) by producing a credit report that was

false, inaccurate, and misleading.  (Compl. ¶ 27.)

Section 1681e(b) requires consumer reporting agencies to "follow reasonable

procedures to assure maximum possible accuracy" "when preparing a consumer report."[1]

*Nelski*, 86 F.App'x at 844.  This section "does not impose strict liability for incorrect

information appearing on a [CRA's] credit reports."  *Id.* (citation omitted).  Rather, "[l]iability

flows only from a 'failure to follow (1) reasonable procedures (2) to assume maximum

possible accuracy of the information (3) concerning the individual about whom the

information relates.'"  *Id.* (citation omitted).  The reasonableness standard is "what a

reasonably prudent person would do under the circumstances."  *Id.*  (citation omitted).

In *Nelski*, the Sixth Circuit stated the elements necessary to assert a claim under

1681e(b).  86 F.App'x at 844.  A plaintiff must prove: (1) the defendant reported inaccurate

information about the plaintiff; (2) the defendant either negligently or willfully failed to follow

reasonable procedures to assure maximum possible accuracy of the information about the

plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate

cause of the plaintiff's injury.  *Id.*  (citation omitted).

---

[1]15 U.S.C. § 1681e(b) Accuracy of report: Whenever a consumer reporting agency
prepares a consumer report it shall follow reasonable procedures to assure maximum
possible accuracy of the information concerning the individual about whom the report
relates.

Here, Equifax argues that Plaintiff cannot prove that her credit report contained inaccurate information.[2]  (Equifax's Mot. at 2.)  Equifax suggests, because her report did not contain inaccurate information, Plaintiff cannot maintain an action under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i.  (*Id.*)

The Court therefore must look to the complaint to determine whether Plaintiff has alleged facts that would support a finding of a report that was inaccurate.  "A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Poore v. Sterling Testing Systems, Inc.*, 410 F.Supp.2d 557 (E.D.Ky. 2006) (citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)) (discussing the elements of a § 1681e(b) violation.).  *See also Dickens v. Trans Union Corp.*, 18 F.App'x 315, 318 (6th Cir. 2001) (citing other circuit law for the proposition that credit reports can be "so misleading as to be inaccurate within the meaning of § 1684e(b)").  *And see Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 617-18 (6th Cir. 2012) (surveying case law and citing with approval that an FCRA violation occurs when CRAs or furnishers provide information that  creates a "materially misleading impression," that omits material to create "incomplete or inaccurate" information, or even when a furnisher fails to identify that a consumer has disputed his information, when the dispute is a bona fide one, "that could materially alter how the reported debt is understood.") (citations omitted).

Plaintiff argues that Equifax and FIA's argument is without merit because "Plaintiff's credit report falsely associates a balance owed on the [FIA account] even though she is

---

[2]FIA joined in Equifax's motion to dismiss.  (Dkt. 16.)

8

merely an authorized user on those accounts, which has no bearing on her creditworthiness." (Pl.'s Resp. at 2.) Plaintiff continues, "[t]he reporting of any balance owed regarding the [] [FIA] account[] on [Plaintiff's] credit report is inaccurate since [she] owes no balance." (*Id.* at 2-3.) This reporting, Plaintiff alleges, constitutes a viable 15 U.S.C. § 1681e(b) claim. (*Id.* at 4.)

The Court does not agree with Plaintiff. The Court finds that Plaintiff has not made any allegations that the report is either inaccurate or misleading. Plaintiff makes conclusory allegations that the report is inaccurate and misleading. These allegations are insufficient. *See Dickens v. Trans Union Corp.*, 18 F.App'x 315, 318 (6th Cir. 2001) ("[The plaintiff's] mere speculation that the notation was misleading, without more, is insufficient as a matter of law to establish a prima facie case of inaccuracy in violation of § 1681e(b).").

The Court finds *Dickens v. Trans Union Corp.*, 18 F.App'x 315 (6th Cir. 2001) persuasive. In *Dickens*, the plaintiff co-signed on his daughter's application for a car loan. 18 F.App'x at 316. The daughter later declared bankruptcy and she had the money owed on the car loan "charged off" as bad debt. *Id.* The plaintiff then applied for a credit card with Bank One. *Id.* Bank One denied the plaintiff's application based on a credit report Trans Union sent it. *Id.* The credit report contained a notation that the plaintiff was a "participant on [the car loan] account." *Id.* The notation also showed that no money was owing on the account and that it was "charged off as bad debt." *Id.* The plaintiff filed suit against Trans Union for reporting inaccurate credit information, under § 1681e(b), and failing to properly reinvestigate disputed information, under § 1681i. *Id.* The district court held that Trans Union had, indeed, reported accurate information about the plaintiff, and that therefore the plaintiff could not succeed on his claims. *Id.* at 317.

The Sixth Circuit affirmed.  On appeal, the plaintiff argued that the report was misleading because it contained the phrase "included in bankruptcy" without indicating that the debt had been paid in full.  *Dickens*, 16 F.App'x at 318.  The plaintiff also argued that the report was misleading because it listed the loan as "charged off as bad debt," "without indicating that the loan later had been paid in full."  *Id.*  The Sixth Circuit held that Trans Union's report "accurately" reflected the information provided by the lender, and that Bank One's "credit department fully understood the meaning of Trans Union's report . . . that [the plaintiff] did not file for bankruptcy himself, but rather, had co-signed on a loan that had been charged off in a bankruptcy proceeding."  *Id.*  The court noted that the plaintiff "provided no evidence that the notation was misperceived by Bank One's credit department as his own bankruptcy.  *Id.*  The court stated that "[a]lthough a lay person might not have understood the terminology used by Trans Union in its credit report, there is no question that Bank One understood [the plaintiff's] role in the bankruptcy proceeding."  *Id.*  The court reasoned that the plaintiff's "mere speculation that the notation was misleading, without more, is insufficient as a matter of law to establish a prima facie case of inaccuracy in violation of § 1681e(b)."  *Id.*

This case presents the Court with a situation analogous to the *Dickens* situation: a credit report that contains information, potentially negative, about a second person to whom the plaintiff is somehow connected.  There, the plaintiff co-signed an auto loan that his daughter had charged off in a bankruptcy.  Here, Plaintiff has the authorization to use a second person's account that that second person had a balance on.  But in both *Dickens* and here, the information provided was accurate.  Plaintiff does not deny that she is an authorized user on the FIA account.  She therefore argues that the information is

10

misleading.  But Plaintiff does not support that argument with any factual allegations that anyone was misled by the credit report information.  Nor does Plaintiff present any allegations in her complaint that the "authorized user" notation and reporting of the balance negatively affected her or her creditworthiness.  Plaintiff does allege, in her response, that she "intends to introduce expert testimony at trial showing that this additional debt has a negative effect on [Plaintiff's] credit rating."  (Pl.'s Resp. at 4.)  But this conclusory allegation, without more, again, is insufficient to survive a motion to dismiss.  Plaintiff has not pleaded facts to support a claim.

The Court dismisses this claim.

### B. Plaintiff has not stated a cause of action that Equifax violated § 1681i(a)(1)(A) because Plaintiff has not pleaded sufficient factual allegations that Equifax did not conduct a reasonable investigation

Plaintiff alleges that Equifax violation § 1681i because it failed to conduct a reasonable reinvestigation after Plaintiff notified it of her dispute.  (Compl. ¶ 29.)

15 U.S.C. § 1681i(a)(1)(A) provides:

(a) Reinvestigations of disputed information

(1) Reinvestigations required. - -

(A) In general. - - Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in

11

accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

The FCRA requires that a CRA "[provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency."  15 U.S.C. § 1681i(a)(6).

While the FCRA requires a CRA to conduct a reasonable reinvestigation, the FCRA also allows CRAs to "terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A).   If a CRA terminates a frivolous or irrelevant dispute, though, it must notify the consumer within five  business days after making the determination.  15 U.S.C. § 1681i(a)(3)(B).  Here, though, Plaintiff alleges that Equifax did contact FIA about the disputed information, so the frivolous or irrelevant section does not apply.

In the general allegations section of her complaint, Plaintiff alleges that, when she disputed the credit reports from Trans Union and Experian, they removed the information from her credit report.  (Comp. ¶ 9.)  Plaintiff alleges that Equifax did not remove the information and that she never received a response from Equifax either.  (*Id.* ¶ 10.)  In the specific count allegations, Plaintiff states that Equifax negligently and willfully failed to conduct a reasonable investigation of Plaintiff's disputed information as 15 U.S.C. § 1681i requires. (*Id.* ¶¶ 29, 36.)

Plaintiff argues that Equifax breached its duty to "follow reasonable procedures to assure maximum possible accuracy" of the information it reports by including the FIA account on Plaintiff's credit report and noting that the account had a balance on it.  (Pl.'s Resp. at 4.)  Plaintiff maintains that the reporting is inaccurate because Plaintiff does not owe the amount listed, the account holder owes the amount.  (*Id.*)

Plaintiff suggests that "Equifax willfully failed to follow reasonable procedures to assure the maximum possible information about [Plaintiff] on her credit report . . . since Equifax continued to report the accounts after Plaintiff disputed the information."  (Pl.'s Resp. at 4.)  Plaintiff states that Equifax's reporting injured her because her credit report indicates that she is responsible for $2,734.00.  (*Id.*)

The Court again finds that Plaintiff has failed to offer any factual support for her claims.  Plaintiff offers conclusory allegations of Equifax's either negligent or willful failure to conduct a reasonable reinvestigation.  Plaintiff does not allege how or to what extent Equifax failed to conduct a reinvestigation.

While the fact that Trans Union and Experian removed the information from Plaintiff's credit report could be some evidence of a wanting procedure or reinvestigation, without supporting facts, Plaintiff cannot even point to their removal as sufficient evidence.  In *Nelski*, the plaintiff argued that the other two national credit reporting agencies, Equifax and Experian, "produced accurate credit reports after [the dispute], therefore implying that Trans Union's conduct and procedures were somehow below the industry standard."  86 F.App'x at 846.  The Sixth Circuit noted that "[s]uch evidence might have some relevance in determining whether Trans Union's procedures were reasonable and could even present a genuine issue of material fact."  *Id.*  But the court noted that the plaintiff failed to provide

13

any specific details (*i.e.*, what procedures Equifax and Experian employ[ed] which Trans Union [did] not), [and that she did] not even offer[] any evidence this was, in fact, the case." *Id.*

Here, as in *Nelski*, Plaintiff has not provided any allegations, let alone details, that Equifax's procedures were unreasonable.  The Court recognizes that Plaintiff has alleged that she did not receive a response from Equifax.  But that failure to receive a response, standing alone, without any factual allegations connecting that failure to receive with Equifax's alleged unreasonable procedures, is insufficient to state a claim under § 1681i. The Court further notes that that Plaintiff neither pleaded facts stating that the reinvestigation was over or that Equifax had only the means to mail her the reinvestigation results.  Such factual failures, the Court finds, entitles Equifax to dismissal of this claim.

**C. Plaintiff has not stated a cause of action against FIA because Plaintiff has not made the appropriate allegations that FIA submitted inaccurate or misleading information upon receipt of Plaintiff's inquiry from Equifax; Plaintiff has also failed to allege facts that would support that FIA did not conduct a reasonable investigation upon receipt of Plaintiff's dispute from Equifax**

Plaintiff alleges that FIA violated § 1681s-2 by negligently and willfully failing to conduct a proper investigation by failing to review the relevant information provided to it and by failing to remove the FIA account from Plaintiff's credit report.  (Compl. ¶¶ 40-41.) Plaintiff alleges the information FIA provided was inaccurate and created a misleading impression on Plaintiff's credit report.  (*Id.* ¶ 42.)  Because of FIA's actions, Plaintiff states she suffered damages, mental anguish, suffering, humiliation, and embarrassment.  (*Id.* ¶ 43.)

Section 1681s-2 prevents "furnishers of information" "from spreading inaccurate consumer-credit information." *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (citation omitted).  The section "works in two phases."  *Id.*  The section first requires furnishers to provide CRAs with accurate information about their consumers.  *Id.* (citing 15 U.S.C. § 1681s-2(a)).  After the furnisher provides the initial information, a CRA may ask the furnisher "to respond to disputes about the consumer information provided." *Id.*  "If at some point a CRA discovers that either the 'completeness or accuracy' of a consumer's information is in dispute–and provided that it does not determine the dispute to be 'frivolous or irrelevant'–that CRA will then notify the original furnisher and provide it with 'all relevant information regarding the dispute.'" *Id.* (quoting §1681i(a)(1)-(3)).  If a furnisher receives notice from a CRA, it faces the following duties:  After receiving notice pursuant to [§] 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall–

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the [CRA] pursuant to {§] 1681i(a)(2) of this title;

(C) report the results of the investigation to the [CRA];

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all others [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes

15

of reporting to a [CRA] only, as appropriate, based on the results of the reinvestigation promptly–

>    (i) modify that item of information;
>
>    (ii) delete that item of information; or
>
>    (iii) permanently block the reporting of that item of information.

*Id.* (quoting 15 U.S.C. § 1681s-2(b)(1).

A consumer can file a private enforcement action only under § 1681s2(b), only after the furnisher receives notice of a dispute from a CRA. *Boggio*, 696 F.3d at 617-18.   The Sixth Circuit has explored the parameters of the requirements § 1681s-2(b) places upon furnishers. *See Boggio*, 696 F.3d at 616-18.

The Sixth Circuit has explored what triggers § 1681s-2(b)(1)(D), the provision requiring furnishers to take certain actions if a furnisher discovers incomplete or inaccurate information. *Boggio*, 696 F.3d at 617-18.  "[F]alse information about a consumer is clearly inaccurate[.]" *Id.* at 617.  The court also noted how a report that "provides information in such a manner as to create a materially misleading impression," also violates the section. *Id.* (citation omitted).  The misleading impression can involve inaccurate information or an omission that renders the reported information misleading.  *Id.*  The Sixth Circuit also noted how the Fourth and Ninth Circuits have held that a report that "fails to identify that a consumer disputes his information, at least where the consumer's dispute is 'a bona fide dispute, a dispute that could materially alter how the reported debt is understood,'" also triggers the statute.  *Id.* at 618 (citations omitted).

Here, for the same reasons that the Court granted Equifax's motion to dismiss, the Court grants FIA's motion–Plaintiff has failed to make factual allegations that support her

16

claims that FIA reported inaccurate or misleading information or had unreasonable procedures. *See Elsady v. Rapid Global Bus. Solutions, Inc.*, 09-11659, 2010 WL 2740154, at *7 (E.D.Mich. July 12, 2010) (Cohn, J.) ("[T]here is no reason to define accuracy differently for consumer reporting agencies and furnishers. The purpose of [the] FCRA is to protect consumers by ensuring accurate reporting of information and the commitment to accuracy should apply equally to all entities involved in the reporting process.").[3]

## IV.   Conclusion

For the above-stated reasons, the Court GRANTS Defendants' motion for judgment on the pleadings/motion to dismiss and DISMISSES this case.

---

[3]The Court notes that, while Equifax relies heavily on the *Elsady* opinion. The *Elsady* court stated that, "[s]everal courts, including the Sixth Circuit have held a report is accurate for the purposes of the FCRA so long as it is technically accurate, or accurate on its face." 2010 WL 2740154, at *6 (citations omitted).  The court noted the Sixth Circuit's prior approval of what it styled the "technical accuracy rule."  *Id.*

> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its face, or put somewhat differently, "technically accurate."  That is, a credit reporting agency satisfies its duty . . . if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

*Id.* quoting *Dickens v. Trans Union Corp.*, 18 F.App'x 315, 318 (6th Cir. 2001) (other citations omitted).  The *Elsady* court explained, "[u]nder this approach, a credit or employment report must be considered accurate so long as all of the information it contains is accurate."  *Id.*  The court continued, "[i]t is irrelevant whether additional information is omitted which results in a report that is misleading to a reader of the report.  *Id.*

While Defendants advocate for the "technically accurate" standard, the Court notes that the Sixth Circuit, in *Boggio*, has found that materially misleading information in a credit report can also violate the FCRA.  The Sixth Circuit therefore has relaxed the "technically standard."  Here, though, the Court finds that Plaintiff has not made factual allegations that the information reported was inaccurate or misleading.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 1, 2013


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 1, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer

18